1

Anton Ewing
3077 Clairemont Drive #372
San Diego, CA 92117
619-719-9640
anton@antonewing.com

Plaintiff In Pro Per

FILED

APR 21 2016

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      7H          DEPUTY

## THE UNITED STATES FEDERAL DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTON EWING,<br><br>        Plaintiff,<br><br>    Vs.<br><br>Lend Mark Capital Group Inc., a New York corporation,<br>Membar Inc., a New York corporation,<br>Alex Kofman individual et al.<br>DOES 1-100;<br>ABC CORPORATIONS 1-100;<br>XYZ, LLC's 1-100.<br><br>        Defendants | Civil Case No. **16CV0967 BAS NLS**<br><br>**COMPLAINT FOR VIOLATIONS OF CALIFORNIA'S INVASION OF PRIVACY ACT, CAL. PENAL CODE SECTION 630, *ET SEQ.;* 18 U.S.C. §1964(c) RICO; 47U.S.C.§227 TCPA – ROBO SPAM CALLER, FRAUD; B&P §17200 – UNFAIR BUSINESS PRACTICES ACT**<br><br>**Judge:**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Anton Ewing ("Plaintiff"), on behalf of himself (in propria

persona), alleges as follows against defendants, Lend Mark Capital Group Inc., a

New York corporation (herein "LENDMARK"), Membar Inc., a New York

corporation (herein "MEMBAR"), Alex Kofman an individual (herein

"KOFMAN"), (Collectively herein "MEMBAR RACKATEERS"), DOES 1-100, ABC CORPORATIONS 1-100, and XYZ, LLC's 1-100.

Plaintiff has never had any prior business relationship with any of the Defendants. Plaintiff's cellular telephone number 619-719-9640 is a private personal cellular telephone number.

## JURISDICTION TO HEAR THIS COMPLAINT IN STATE COURT

Plaintiff Anton EWING (herein "EWING") brings this action for multiple violations of California's Privacy Act and California Penal §630, et seq. by Defendants as hereinafter described. The causes of action are, in large part, state law violations regarding illegal recording, unfair business practices, fraud, and robo-dialing. In addition, Defendants have violated 48 U.S. C. §227.

## Standard Applicable to a Preliminary Injunction

To demonstrate his entitlement to a preliminary injunction, Plaintiff EWING must show (a) that he will suffer irreparable harm and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiffs' favor.

This Court has personal and subject matter jurisdiction and venue over state law claims and may hear pendant federal law violations.

The Court is requested to enter an order for preliminary injunction to prohibit Defendants from calling or spamming Plaintiff and to prohibit Defendants from selling his personal confidential information to third parties.

## FICTITIOUS DEFENDANTS

Does 1-100, ABC Corporations 1-100 and XYZ, LLC's 1-100, are each sued fictitiously because their true names are currently unknown but leave to amend is hereby reserved and amendment will be made to properly name said defendants as soon as discovery allows therefor.

## GENERAL ALLEGATIONS & CORPORATE BACKGROUND

1.      Plaintiff Anton Ewing is a U.S. citizen and a resident of the City of San Diego, County of San Diego, State of California.

2.      Defendant LENDMARK, is a corporation formed by the Secretary of State of New York and was registered to do business in New York on or about May 1, 2013.  LENDMARK purposefully directed its activities into California and has availed itself of the benefits and protections of California law. No defendant listed or named in this lawsuit has ever obtained a California Finance Lender license.   This action arises out of Defendants' violations of California's Invasion of Privacy Act, Cal. Penal Code §630, *et seq.* ("CIPA"), which prohibits the recording of confidential communications without the consent of all parties to the

conversation as well as violations of Racketeering Influence and Corrupt Organizations Act, 18 U.S.C. §1964 and the Telephone Consumer Protection Act, 47 U.S.C. §227.  Additionally, as a pendant claim, Defendants have violated California Public Utility Code section 2873 by using an automated dialer and automated answering device to call Plaintiff.

3.     During the period relevant herein and continuing presently, Defendant LENDMARK was and continues to be the alter ego of Defendant KOFMAN and MEMBAR for vicarious liability purposes.  Notwithstanding, each defendant is and was a co-conspirator with each of the others.

4.     On April 19, 2016 Defendant LENDMARK, or one of its employees, agents or contractors at its direction and control, called Plaintiff from 877-404-4710 on Plaintiff's personal cellular telephone at 619-719-9640 for which EWING has expressly informed the public to not make solicitation calls via national do-not-call list registration as well as other public warnings.  A personal cellular phone is not even required to be listed on the National Do Not Call list in order to receive protection from spam telemarketers.

5.     During the period relevant herein, MEMBAR RACKETEER defendants were a provider of information technology and centralized operational and back-end support services to LENDMARK, and all of its subsidiaries. As such, the MEMBAR RACKETEERS provided the infrastructure for dialing and

recording the calls at issue in this litigation.  The MEMBAR RACKETEERS use automated telephone dialing systems and recording devices at the direction of the MEMBAR RACKETEERS, and its relevant subsidiaries.  The MEMBAR RACKETEERS also managed the call centers and telephony architecture and telephone recordings for the enterprise, and its subsidiaries, including Defendant LENDMARK.  The MEMBAR RACKETEERS continue to manage call centers and recordings on behalf of the racketeering enterprise business.  Defendant LENDMARK is technologically sophisticated and employs this high level of knowledge and know-how to run its criminal syndicate.

6.     Moreover, LENDMARK continues to monitor and record telephone calls to California residents, including Plaintiff.

7.     During the relevant period herein, thousands of telephone calls with Individuals in California were recorded by the LENDMARK telephone systems at the direction of each of the other Defendants.

## JURISDICTION

8.     Jurisdiction is proper under federal question jurisdiction as a result of violations of RICO (18 USC 1962) and 47 USC §227 for spam calling Plaintiff's cellular telephone listed on the national Do Not Call list more than 31 days prior to the offending calls.  Thus US Supreme Court has held in the *Mims* case that TCPA calls are able to be filed and heard in federal district courts. This Honorable Court

has subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C.

§ 1331 because Plaintiffs' TCPA claims arise under the laws of the United States,

specifically 47 U.S.C. § 227.

## VENUE

9.     Venue is proper in San Diego County because Plaintiff resides in this

District and a substantial part of the events giving rise to Plaintiff's claims

occurred in San Diego County.  Each of the Defendants has sufficient minimum

contacts with San Diego County and the State of California, and otherwise

purposely avail themselves of the markets in this state.  Defendants knew, then

they were intentionally and purposefully calling area code 619, that they were

directing their illegal activities into San Diego county, in the state of California.

## PARTIES

10.     Plaintiff ANTON A. EWING is a resident of San Diego County,

California whose confidential telephone communications were unlawfully recorded

by the MEMBAR RACKETEER defendants during the period relevant herein.

Plaintiff EWING had placed his telephone number for his cellular phone on the Do

Not Call registry in 2012. On April 19, 2016, Plaintiff EWING was knowingly and

intentionally called by the LENDMARK Defendants based on a telephone listed

obtained by the MEMBAR RACKETEERS.

**Defendants**

11.     Upon information and belief, Defendant LENDMARK is located on 2340 86th St. 2nd Floor Brooklyn, New York.

12.     Plaintiff is informed and believes, and therefore alleges, that Defendant MEMBAR RACKETEERS owned the call centers that were used to make the non-consensual recordings of confidential communications that are at the core of this matter.  MEMBAR RACKETEERS also supervised and conducted the internal affairs and daily business operations of Defendant MEMBAR RACKETEERS in such a way as to treat all of its subsidiaries, including LENDMARK as their alter ego, by engaging in conduct, acts or omissions including controlling Defendant MEMBAR RACKETEERS to such a degree as to render LENDMARK a mere instrumentality of Defendant MEMBAR RACKETEERS.  Defendant LENDMARK, its agents and employees constitute a racketeering enterprise.  Said enterprise used and employed the wires of the United State of America to engage in fraudulent and criminal activity by calling Plaintiff's California cellular telephone.  These calls crossed state lines and thus constitute the predicate act of wire fraud in that Defendants used the telephone infrastructure of the United States to commit their interstate criminal activities that were continuous and ongoing for several years.  Defendant is in the business of illegally selling lists of names of persons on the National Do Not Call list so that those persons get and

receive calls from spammers and telemarketers.  Defendant LENDMARK knows that all of the calls made are recorded without permission or proper disclosure of the recording.

13.     Plaintiff is informed and believes, and therefore alleges, that defendant MEMBAR RACKETEERS' comprehensive right to control is sufficient to meet the agency standard under California law.

14.     During the relevant period described herein, Defendants each aided and abetted, encouraged and rendered substantial assistance to each other in furthering the CIPA and RICO violations.  In addition to acting on their own behalf individually, Defendants, each of them, are and were acting as the agent, alter ego, servant, employee, joint venturer, and representative of, and with the knowledge, consent and permission of, and in concert with the other defendants.  The actions of the defendants as described in this complaint all fall within the course, scope, and authority of the agency, service, and employment relationships that exist between the defendants, and as such, create joint ventures between all of the defendants to the extent that binding legal relationships do not already exist. The actions and representations of Defendants constitute a conspiracy on the part of Defendants for the purpose of such actions and representations made to the Plaintiff of this cause of action.   The MEMBAR RACKETEERS illegally and unlawfully engaged in the conduct of an enterprise through a pattern of

racketeering activity. Said conduct occurred over an extended period of time so as to form a pattern. The enterprise consisted of Defendants LENDMARK, MEMBAR, KOFMAN and each fictitiously named defendant. The enterprise was controlled, operated, directed and managed by Defendants KOFMAN and other persons that are yet to be determined and remain unknown as of the time of filing this Complaint. The racketeering activity consisted of the making of threats, extortion, wire fraud, mail fraud, and violations of California criminal laws, including illegal recording of Plaintiff's calls. Each of the above stated acts by Defendant LENDMARK (who called Plaintiff multiple times) and co-conspirators Defendants KOFMAN and MEMBAR, constitute racketeering activity indictable pursuant to 18 USC §1962, et seq. Defendant LENDMARK has also violated California's racketeering statute (PC §186 et seq), which is hereby incorporated by this reference as if fully set forth herein. This state law racketeering claim is a pendant claim that may be heard by the federal district court alongside the federal question causes of action. Defendants LENDMARK, KOFMAN and MEMBAR are no doubt engaging in organized crime.

Wire Fraud under 18 USC §1343 is when Defendant LENDMARK, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted or caused to be transmitted by means of wire, radio, or

television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice. In this case Defendant LENDMARK called Plaintiff personally and caused Plaintiff to be called and recorded in violation of California's criminal law. Defendant LENDMARK's call constituted a scheme and artifice to defraud Plaintiff and to obtain money and property from Plaintiff. Defendant LENDMARK attempted to get Plaintiff to send them money. The calls were transmitted by means of wires in interstate commerce through the telephone and internet lines of the United States. Defendant LENDMARK's calls also constituted threats and extortion using the wires of the United States. Defendant LENDMARK made two or more calls to Plaintiff to engage in wire fraud, extortion and threats. Further, the shear volume of terrorist threats made by Kofman in his emails to Plaintiff from his email address at alex@lendmarksolutions.com on April 19, 20 and 21st of 2016 is beyond imagination and completely out of the realm of normal behavior. For purposes of the particularity requirement, Defendant LENDMARK called on April 19, 2016 to 619-719-9640 at 1:00 PM. MEMBAR RACKETEERS are clearly the type of racketeer that Congress intended to stop when it passed the RICO law some 40 years ago.

## FACTUAL ALLEGATIONS REGARDING CONFIDENTIAL
## TELEPHONIC COMMUNICATIONS WITH PLAINTIFF

15.     On April 19, 2016, plaintiff EWING was called by LENDMARK and engaged plaintiff EWING in confidential telephone communications.  To the best of plaintiff EWING's recollection, he spoke to LENDMARK's personnel several times in addition to being called by the LENDMARK's robotic ATDS telephone dialing system.  On any of the occasions when Plaintiff spoke telephonically with MEMBAR RACKETEER Defendants' personnel, Plaintiff EWING was not advised at the outset of the calls that the calls might be recorded by MEMBAR RACKETEERS Defendants.  In light of the sensitive nature of the personal and confidential information being discussed during the telephone calls, Plaintiff EWING had an objectively reasonable expectation of privacy – in that he reasonably expected that the conversations were not being overheard, monitored and/or recorded.   Defendant MEMBAR RACKETEERS refused to provide Plaintiff with a written copy of its do not call policy and refused to take Plaintiff's name and number off the telemarketing list.

## DEFENDANTS' IMPROPER AND ILLEGAL
## RECORDING POLICIES AND PRACTICES

16.     Defendants' policies and practices, during the period relevant herein

and continuing to the present, were to record confidential telephonic communications with California individuals, without advising them at the outset of each telephone call that it is being recorded, in violation of California Penal Code §630, *et seq.*

17.  The MEMBAR RACKETEER Defendants did not obtain consent to record any of the telephone conversations prior to the time they recorded the calls.

18.  MEMBAR RACKETEERS designed and implemented an extensive call center system for the thousands of consumer transactions serviced by its various affiliates and subsidiaries.  During the times relevant to the CIPA claims made herein, the system included 3 domestic and international call centers from which customer calls are placed and received on behalf of MEMBAR RACKETEERS business units.

19.  MEMBAR RACKETEERS operate, implement and manage the architecture and infrastructure necessary to meet the call recording strategies set by MEMBAR RACKETEERS Defendants.  At the direction of the relevant business unit subsidiary of MEMBAR RACKETEERS, MEMBAR RACKETEERS's infrastructure dialed telephone numbers to California individuals and recorded the telephone calls. The volume of calls was extraordinary.  At each call center, defendant MEMBAR RACKETEERS used databases and servers to store and retrieve the recordings.

20.     MEMBAR RACKETEERS continue to maintain call centers and oversee recordings in connection with MEMBAR RACKETEERS's line of business.  Plaintiff will seek, demand and argue for punitive damages at trial herein to send a message to Defendants and others similarly situated that violation of California's criminal and federal harassment laws are not allowed.

21.     The central automated telephone dialing system ("ATDS") was, and currently continues to be, used by Defendants to initiate up to two thousand calls a day.  The ATDS is used by all the subsidiaries of MEMBAR RACKETEERS. Approximately 10% or 1,000 of these calls were made to California consumers. Defendants' policy and practice was to set the ATDS to call the consumer's home, business, and cellular telephones up to five times a day.  Depending on the instructions given by each business unit, 15%-20% of all of the telephone calls (at times up to 100% of the calls in certain businesses) were set to record by MEMBAR RACKETEERS and recorded, using a centralized call recording hardware and software.  Recording began when the customer was connected with a call center agent.

22.     Defendants together strategically managed the ATDS to maximize resources, i.e., by employing a consistent process across the businesses for determining how and when calls would be made through the ATDS and scoring or rating the calls for advance treatment through the ATDS.

23.     MEMBAR RACKETEERS's businesses directly loaded customer information onto MEMBAR RACKETEERS's "mainframe" or "back-end" computer system, which includes the ATDS.  During the day, accounts would be loaded into dialer tables, and the tables would then be run through the dialer.  Once the ATDS would initiate the call, and a customer would answer, MEMBAR RACKETEERS's "automated call distributor" would then route the call to an available agent. Defendants called Plaintiff EWING at 619-719-9640, his personal cellular telephone.  Plaintiff EWING was physically present in California during each and every illegally recorded telephone conversation alleged herein.  At the same time the call was routed, the agent received the customer's information on a computer screen.  If a recording of the telephone communications was going to be made by the recording system, the recording would begin when the MEMBAR RACKETEER Defendants' agent picked up the call.  The agents do not have the ability to stop or start call recording.  The agents do not know which calls are being recorded.  An employee of MEMBAR RACKETEERS stated that all calls are recorded and there is no warning or disclosure of such recording to the consumer.

24.     With respect to whether the telephone agents themselves provide the call recipients with a verbal advisement that the call may be recorded, Defendants admit to a policy whereby the agents *do not provide any advisement* to customers that the calls are being recorded.

25.    For calls related to the MEMBAR RACKETEERS business, Defendants are required, pursuant to California Penal Code §630 et seq., to give a verbal advisory that the call is being recorded before speaking to a customer. The MEMBAR RACKETEERS Defendants have previously admitted that based on an evaluation of a sample set of recordings, a verbal advisory was not given.

26.    CIPA prohibits the recording of communications without first obtaining the consent of all parties to the conversation. Cal. Penal Code §632. PC Section 632.7 does not require that a communication be confidential in order to be provided protection from interception or recording. The text of the section notably contains no reference to "confidential communications;" moreover, more than just confidential communications are protected. ALL communications that are recorded without the consent of both parties to the communication are protected.

The right protected by Section 632 is not against the betrayal of a party's confidence by the other party. Rather, Section 632 protects against simultaneous dissemination to an unannounced second auditor without the party's consent. Any communication, regardless of the intimacy of the facts discussed, that is recorded devoid of notice of recordation, is a violation of California law.

27.    Under California law, the term "confidential communication" includes any communication carried on in circumstances that may reasonably indicate that any party to the communication desires it to be confined to the parties thereto. Cal.

Pen. Code §632(c).   In other words, a communication is confidential "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard."

28.    In light of the sensitive nature of the personal financial and related information being discussed in the calls with Defendants, Plaintiff had an objectively reasonable expectation of privacy – in that EWING reasonably expected that the conversations were not being overheard, monitored and/or recorded.

29.    The absence of any such advisement would lead a California consumer to reasonably anticipate that his/her telephone call was not being recorded.  In November 2011, the California Court of Appeal in *Kight v. CashCall, Inc.*, 200 Cal. App. 4th 1377, 1385 (2011), held that an automated advisory that the call "may be monitored and recorded for quality assurance" does not constitute adequate notice to the call recipient.

30.    In violation of the CIPA, Defendants recorded Plaintiff's telephone calls without EWING's express consent.

31.    Defendants have engaged in a pattern and practice of recording a substantial percentage of the telephonic communications with individuals located in California.

32.    Defendants intentionally, and without the consent of all parties, by

means of an electronic recording device, recorded confidential telephonic communications with Plaintiff EWING.

33.     The complaint here is timely filed.  The applicable statute of limitations for violations of the CIPA is one year (Cal. Civ. Proc. Code §340(a).

34.     This Complaint is thus timely filed and Defendants have been on timely notice.

## CAUSES OF ACTION

### (For Statutory Damages and Injunctive Relief for Violations of Cal. Penal Code Sections 632 and 637.2(a)-(b))

35.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

36.     At all times relevant herein, MEMBAR RACKETEER's Defendants routinely communicated by telephone with Plaintiff in connection with attempts to sell products of Defendants.

37.     At all times relevant herein, LENDMARK Defendants made use of a software
system that enabled them to secretly record confidential telephone conversations between Plaintiff .

38.     In each of his conversations with LENDMARK Defendants, Plaintiff discussed his confidential personal financial circumstances and affairs, on each

account.  It was reasonable for the Plaintiff to expect that the conversations would be confined to the parties to the conversation, and that his conversations were not being overheard or recorded.

39.     Each of the conversations between LENDMARK's Defendants and EWING was a "confidential communication" within the meaning of California Penal Code section 632(c).

40.     California Penal Code section 632 prohibits a party from recording such conversations without first informing all parties to the conversation that the conversation is being recorded.  Defendants' confidential telephone communications with Plaintiff were secretly and surreptitiously recorded by Defendants, without obtaining consent to record such conversations.

41.     LENDMARK Defendants' practice of recording telephone conversations with Plaintiff violated California Penal Code section 632(a).

42.     Pursuant to California Penal Code §637.2(a)(1), Plaintiff is entitled to recover statutory damages in the amount of $5,000 per violation.  Plaintiffs' counsel is also entitled to attorneys' fees and costs pursuant to Cal. Civ. Proc. Code §1021.5.  Plaintiff consulted with several California licensed attorneys and paid for said legal advice to enable him to bring this suit.

43.     Pursuant to California Penal Code §637.2(b), Plaintiff also seeks a

preliminary and permanent injunction to restrain Defendants from committing further violations of CIPA and to prohibit and prevent Defendants from making future death threats to Plaintiff and his family.

44.     Pursuant to California Penal Code §637, Defendants have willfully disclosed the contents of Plaintiff's telephonic communications to a third party without EWING's consent.

## RICO CONSPIRACY 18 U.S.C. §1964(c)

45.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46.     Defendants, and each of them, have engaged in the predicate acts of wire fraud and money laundering which supports the claim of violation of 18 U.S.C. §1962(d) and (c), conspiracy to conduct racketeering affairs through a pattern of racketeering activity.   Additionally, Defendants have made express and intentional threats directly at Plaintiff that were within the course and scope of the racketeering enterprise's operations.  The enterprise is the combination of the entities named herein as defendants.  Specifically, the MEMBAR RACKETEERS is the enterprise.  The period of the conspiracy has lasted from at least April 2016 forward to present day.  Upon information and belief, the conspiracy began in 2013 when Defendant KOFMAN created LENDMARK and MEMBAR.  There are two or more acts that form the basis of racketeering engaged in by Defendants by using

the wires of the United States to illegally record Plaintiff's telephonic conversations and laundering over $10,000 of the proceeds of the wire fraud through financial institutions. Defendants engaged in the fraudulent use of the wires to threaten and extort Plaintiff into handing over money or property to Defendants. Defendants are also engaging in voluminous spam calling in direct violation of 47 U.S.C. §227 to solicit confidential information over the wires of the United States. Defendant LENDMARK is associated with and a member of the enterprise as alleged and described above by Plaintiff. Defendant LEANDMARK knowingly committed at least two of the predicate acts herein described. The predicate acts formed a pattern of racketeering activity by having the same or similar purposes, results, participants, victims, or methods of commission, or were otherwise interrelated by distinguishing characteristics LENDMARK so that they were not isolated events. The predicate acts amounted to, or threatened the likelihood of, continued criminal activity posing a threat of continuity projecting into the future and through the commission of the two or more connected predicate acts, the Defendants conducted or participated in the conduct of the affairs of the enterprise. The enterprise was engaged in, or its activities affected, interstate commerce. The use of the wires and the laundering of money through financial institutions affects interstate commerce.

47.     Plaintiff has been injured in his business and property as a direct and proximate cause of Defendants willful violations of California law as described above, which is the pattern of racketeering activity.  Plaintiff business has suffered a significant economic downturn as a direct and proximate cause of LENDMARK's racketeering activities as described herein.  Plaintiff has lost money and revenues that could have been earned but for MEMBAR RACKETEER's racketeering activity.  Defendants did not act by mistake or accident but rather acted voluntarily and knowingly all while conspiring to defraud Plaintiff of his privacy, money, business and property.  Each and every fraudulent telephone conversation that forms the basis of this cause of action constituted an illegal use of the wires in violation of 18 U.S.C §1343.

48.     Plaintiff demands threefold damages as well as statutorily imposed attorney fees as a result of Defendant's racketeering activities described above.  Plaintiff has had to consult with a licensed attorney at law to prosecute this action and those attorney fees are requested to be paid or reimbursed.

49.     Defendant's actions did not result in nor were caused by the purchase of or sale of securities.

50.     Defendant's use of the wires (18 U.S.C. 1343) within the United States went across state lines and thus constitutes the interstate commerce of the racketeering enterprise of Defendants.

51.     Defendants committed two or more acts of racketeering activity within the ten years prior to filing this cause of action.

52.     In addition, Defendant's pattern of racketeering activities is the constant and multiple recording of thousands of telephone calls illegally over an extended period of time as described above as well as a knowing and intentional violation of the Do Not Call registry.  Moreover, Defendant LENDMARK's extortionate threats constitute the pattern of racketeering activities.

53.     Each Defendant named herein engaged, directly or indirectly, in the pattern of racketeering affairs and activities described above.  Defendant LENDMARKS's overt and express threats to Plaintiff over the telephone also constitute predicate acts for purposes of racketeering activity.

54.     Defendants laundered their profits, revenues, expenses and income from their racketeering activities as defined by 18 U.S.C. 1961(1), through US financial institutions in violation of 18 U.S.C. §§1956 and 1957.  Defendant LENDMARK has earned, illegally, over $10,000 in this racketeering enterprise operation and Defendant LENDMARK has laundered those said funds through financial institutions in the United States.

55.     The Defendants specified unlawful activity for purposes of 18 U.S.C. §1956(c )(7), is 18 U.S.C. §1343 as defined in 18 U.S.C. §1961(1).

## VIOLATION OF 47 U.S.C. §227 DO NOT CALL REGISTRY

56.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

57.     47 C.F.R. 64.1200(c)(2) prohibits calling any number on the national Do Not Call Registry.  47 C.F.R. 64.1200(a)(1)(iii) states that no person or entity may initiate any commercial purpose telephone call to any cellular telephone that is already on the national do-not-call registry.  Plaintiff and Defendants do not and did not ever have any pre-existing or established business relationship at any time. Defendants are not a tax-exempt nonprofit organization or a political organization.

58.     Defendants do not have a do not call database.  Defendants refused to identify themselves upon request by Plaintiff.   Defendants refused to put Plaintiff on their do not call list.  Defendants used and employed an automated dialer to call Plaintiff.

59.     Defendants do not have a do not call policy that is written.

60.     Defendants refused to provide Plaintiff with a written copy of any do not call policy.

61.     Defendants do not scrub their call lists against the national do not call list or registry.

62.     Defendants do not have any personal relationship with Plaintiff.

63.     Defendants refused to provide the full name of the caller on the telephone who initiated the call.

64.     Defendants refused to provide a telephone number or address at which the Defendants could be contacted.

65.     Defendants knowingly and willfully violated the automated-call requirements under 47 U.S.C. §227(b)(3) and willfully and knowingly violated the do-not-call-list requirements under 47 U.S.C. §227(c )(5). *Charvat v. NMP, LLC* (2001, CA6 Ohio) 656 F.3d 440 holds that Plaintiff may recover both $1500 statutory damages awards even if both violations occurred in the same telephone call.

66.     Defendants engaged in unsolicited advertising through the use of wires in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment against Defendants as follows:

A.     For statutory damages in the amount of $5,000 per violation pursuant to California Penal Code §637.2(a)(1) or, if greater, three times actual damages as provided in California Penal Code §637.2(a)(2); $500 plus threefold damages for intentional violation of the Do Not Call registry for each and every

call, failure to maintain an do not call list, and failure to provide a written copy of do not call policy.

B.     For punitive damages in an amount to be determined with exactness at trial herein;

C.     For threefold damages pursuant to 18 U.S.C. §1964(c);

D.     For a preliminary and permanent injunction to restrain further violations of the CIPA, pursuant to California Penal Code §637.2(b);

E.     For the payment of reasonable attorneys' fees and costs of suit incurred herein under all applicable statutes and rules including under Cal. Civ. Proc. Code §1021.5 and 18 U.S.C. §1964;

F.     For pre- and post-judgment interest at the legal rate; and

G.     For any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and demands a trial by jury for all claims so triable.

Dated this 21th day of April, 2016

/s/ *Anton A. Ewing*
Anton A. Ewing,
Plaintiff in pro per

## DECLARATION IN SUPPORT OF COMPLAINT

I, ANTON EWING, hereby depose, declare and state the following as true and correct under penalty of perjury under the laws of the State of California:

1.    I was called multiple times by Defendants herein and said calls were recorded without my knowledge or consent on April 19, 2015.
2.    My cellular telephone was registered with the national Do Not Call list more than 31 days prior to any and all calls made to said cell phone.

I am competent to testify to the above stated factual assertions.

Dated this 21th day of April, 2016



/s/ *Anton A. Ewing*
Anton A. Ewing
Plaintiff in pro per

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT A

23
24
25

## Individual Usage Details for:
## Anton Ewing | 619.719.9640

**Billing period:**   Apr 10, 2016 - Present
Showing details for Talk usage

| | Totals for this billing period: | 186 calls | 752 minutes | $0.00 |
|---|---|---|---|---|

| Date / Time | | Contact | Location | Call Type | Minutes | Charge ($) |
|---|---|---|---|---|---|---|
| 04/19/2016 | 01:37PM | 12 | OAK GROVE | DT | 4 | 0.00 |
| 04/19/2016 | 01:30PM | 12 | INCOMING | DT | 6 | 0.00 |
| 04/19/2016 | 01:17PM | 123 | INCOMING | DT | 4 | 0.00 |
| 04/19/2016 | 01:00PM | 877.404.4710 | INCOMING | DT | 7 | 0.00 |
| 04/19/2016 | 12:36PM | 1234 | INCOMING | DT | 7 | 0.00 |
| 04/19/2016 | 10:23AM | 12345 | INCOMING | DT | 1 | 0.00 |
| 04/19/2016 | 10:10AM | 123456 | SANTA ANA | DT | 3 | 0.00 |
| 04/19/2016 | 10:08AM | 1234567 | SNDG SNDG | DT | 3 | 0.00 |
| 04/19/2016 | 08:20AM | 12345678 | INCOMING | DT | 5 | 0.00 |
| 04/18/2016 | 08:32PM | 123456789 | INCOMING | DT | 5 | 0.00 |
| 04/18/2016 | 06:52PM | 7█████████ | SANTA ANA | DT | 3 | 0.00 |
| 04/18/2016 | 06:50PM | 7███████7 | SANTA ANA | DT | 2 | 0.00 |
| 04/18/2016 | 06:48PM | 7████████7 | SANTA ANA | DT | 2 | 0.00 |
| 04/18/2016 | 06:22PM | 123456 | SANTA ANA | DT | 3 | 0.00 |
| 04/18/2016 | 05:11PM | 7██████ | INCOMING | DT | 3 | 0.00 |
| 04/18/2016 | 04:27PM | 6██████21 | INCOMING | DT | 1 | 0.00 |
| 04/18/2016 | 04:20PM | 6█████████ | SNDG SNDG | DT | 3 | 0.00 |
| 04/18/2016 | 03:57PM | 6█████████8 | INCOMING | DT | 15 | 0.00 |
| 04/18/2016 | 03:57PM | 6█████████ | SNDG SNDG | DT | 1 | 0.00 |
| 04/18/2016 | 03:29PM | 000.000.0000 | BLOCKED | DT | 1 | 0.00 |
| 04/18/2016 | 03:18PM | ██████████ | INCOMING | DT | 2 | 0.00 |
| 04/18/2016 | 03:09PM | 6████████5 | INCOMING | DT | 1 | 0.00 |
| 04/18/2016 | 02:41PM | ██████████ | KEYS | DT | 13 | 0.00 |
| 04/18/2016 | 02:23PM | block6 | INCOMING | DT | 2 | 0.00 |
| 04/18/2016 | 02:12PM | block6 | INCOMING | DT | 10 | 0.00 |
| 04/18/2016 | 02:05PM | ████████ | Toll Free | DT | 2 | 0.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT B

# LEND MARK CAPITAL GROUP
~ The Company That Brings You More ~

## Merchant Pre-Qualification Form

Tel: 877-404-4710  Fax: 347-521-1488

| Business Legal Name: | | | | | | Business DBA Name: | | |
|---|---|---|---|---|---|---|---|---|

| Type of Business Entity (Check One) | ☐ Corporation | ☐ Limited Liability Company | ☐ Partnership | ☐ Limited Partnership | ☐ Limited Liability Partnership | ☐ Sole Proprietor |
|---|---|---|---|---|---|---|

| Does the Merchant have any other businesses with current AdvanceMe contracts? Check one | ☐ YES  ☐ NO | State of Incorporation: | Use of Proceeds: |
|---|---|---|---|

| Physical Street Address: | City: | State: | Zip Code: |
|---|---|---|---|

| Billing Street Address (if different than above): | City: | State: | Zip Code: |
|---|---|---|---|

| Physical Location Phone #: | Billing Location Phone #: | Preferred Contact Phone #: |
|---|---|---|

| Industry Type: (SIC Code or Description) | ☐ Rented  ☐ Mortgaged  Amount: | Current Credit Card Processor: |
|---|---|---|

| Gross Annual Sales (Previous year's Tax return): | Date the Business first processed Credit Cards under current Ownership/Business Start Date: | Average Monthly Credit Card Volume: |
|---|---|---|

| List the total VISA/MasterCard processing volumes from previous four months: | Last Month: | Two Months Ago: | Three Months Ago: | Four Months Ago: |
|---|---|---|---|---|
| | $          # Tickets: | $          # Tickets: | $          # Tickets: | $          # Tickets: |

| Owner/Officer | | Primary Contact ☐ | Job Title: |
|---|---|---|---|
| Last Name: | First Name: | SS#: | Date of Birth:          Home Phone: |

| Street Address: | City: | State: | Zip Code: |
|---|---|---|---|

## Authorizations

LendMark Capital Group ("LMCG") and Capital Access Network, Inc. ("CAN") is the parent of AdvanceMe, Inc. ("AMI") and NewLogic Business Loans, Inc. ("NLBL") (collectively, the "CAN Companies").Each of the CAN Companies offers certain financial products to businesses, and CAN provides certain services to the CAN Companies in connection therewith,including gathering information from applicants and third parties, including credit bureaus, and transmitting such information to the CAN Companies as agent on behalf of the CAN Companies. By signing below, the above listed business ("Merchant") and Owner/s / Officer(s) (collectively hereafter "Applicants") request that AMI or NLBL as applicable evaluate whether Merchant pre-qualifies for the financial product(s) requested by Merchant, as well as any other financial products offered by either AMI or NLB for which the Merchant prequalifies. Applicants represent that the information contained on this Merchant Pre-Qualification Form and the credit card processor statements provided to CAN and/or any of the CAN companies are true and correct, and Applicants will immediately notify CAN of any financial change in Applicants. Applicants hereby authorize CAN as agent on behalf of each of the CAN Companies (1) to obtain on any of the Applicants any investigative reports, credit reports (business and personal), statements from creditors or financial institutions, verification of information provided by any of the Applicants, or any other information (collectively "Applicant Information") that the CAN Companies, or either of them, deem necessary or desirable in connection with the evaluations and (2) to transmit this Merchant Pre-Qualification Form, the credit card processor statements and Applicant Information to one or both of the CAN Companies. Applicants also here authorize each of the CAN Companies, acting on its own behalf, to take any one or more of the actions described in part (1) of the immediately preceding sentence. Applicants hereby authorize the release by any creditor or financial institution to CAN, as agent on behalf of the CAN Companies, and to each of the CAN Companies on its own behalf of any information relating to any of the Applicants. Applicants waive and release any claims against CAN, either of the CAN Companies or any creditor, credit bureau or financial institution arising fromany act or omission relating to the obtaining or release of information\sought by CAN or the CAN Companies. Applicants agree that any pre-qualified terms communicated by or on behalf of CAN and one or more of the CAN Companies are confidential and may not be disclosed to third parties (other than to Applicants' legal or financial advisors or as required by law), except at CAN's express, written direction as agent on behalf of one or more of the CAN Companies.

Owner / Officer's Name: (Print) ...........................................................

Owner / Officer's Signature:    X ..........................................    Date: ..........................................

## Sales Information (To be completed by Sales Representative)

| Sales Rep #: | Sales Rep Name : | Sales Rep Contact #: |
|---|---|---|
| Additional Contact  #: | E-Mail Address : | |

Requested working capital amount: $ _____     Merchant  email address: _____

## Note:

CAN Pre-qualification Form/ Version  1/02 02 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT C

```
Domain Name: LENDMARKSOLUTIONS.COM
Registry Domain ID: 1794774002_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-04-29T19:58:12Z
Creation Date: 2013-04-18T16:06:42Z
Registrar Registration Expiration Date: 2016-04-18T16:06:42Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: clientTransferProhibited http://www.icann.org/epp#clientTransferProhibited
Domain Status: clientUpdateProhibited http://www.icann.org/epp#clientUpdateProhibited
Domain Status: clientRenewProhibited http://www.icann.org/epp#clientRenewProhibited
Domain Status: clientDeleteProhibited http://www.icann.org/epp#clientDeleteProhibited
Registry Registrant ID: Not Available From Registry
Registrant Name: alex kofman
Registrant Organization: membar inc.
Registrant Street: 2885 west 12 street
Registrant Street: 3k
Registrant City: brooklyn
Registrant State/Province: New York
Registrant Postal Code: 11224
Registrant Country: US
Registrant Phone: 9173049014
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: akofman@aol.com
Registry Admin ID: Not Available From Registry
Admin Name: alex kofman
Admin Organization: membar inc.
Admin Street: 2885 west 12 street
Admin Street: 3k
Admin City: brooklyn
Admin State/Province: New York
Admin Postal Code: 11224
Admin Country: US
Admin Phone: 9173049014
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: akofman@aol.com
Registry Tech ID: Not Available From Registry
Tech Name: alex kofman
Tech Organization: membar inc.
Tech Street: 2885 west 12 street
Tech Street: 3k
Tech City: brooklyn
Tech State/Province: New York
Tech Postal Code: 11224
Tech Country: US
Tech Phone: 9173049014
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: akofman@aol.com
Name Server: NS45.DOMAINCONTROL.COM
Name Server: NS46.DOMAINCONTROL.COM
DNSSEC: unsigned
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

# EXHIBIT D

23
24
25

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through April 18, 2016.

Selected Entity Name: MEMBAR INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | MEMBAR INC. |
| **DOS ID #:** | 3877431 |
| **Initial DOS Filing Date:** | NOVEMBER 10, 2009 |
| **County:** | KINGS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
MEMBAR INC.
714 3RD AVE.
BROOKLYN, NEW YORK, 11232

**Registered Agent**

NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es) of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT E

```
Domain Name: LENDMARKCAPITALGROUP.COM
Registry Domain ID: 1801012976_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.godaddy.com
Registrar URL: http://www.godaddy.com
Update Date: 2015-04-29T19:59:07Z
Creation Date: 2013-05-13T17:35:46Z
Registrar Registration Expiration Date: 2016-05-13T17:35:46Z
Registrar: GoDaddy.com, LLC
Registrar IANA ID: 146
Registrar Abuse Contact Email: abuse@godaddy.com
Registrar Abuse Contact Phone: +1.4806242505
Domain Status: ok http://www.icann.org/epp#ok
Registry Registrant ID: Not Available From Registry
Registrant Name: alex kofman
Registrant Organization: membar inc.
Registrant Street: 2885 west 12 street
Registrant Street: 3k
Registrant City: brooklyn
Registrant State/Province: New York
Registrant Postal Code: 11224
Registrant Country: US
Registrant Phone: 9173049014
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: akofman@aol.com
Registry Admin ID: Not Available From Registry
Admin Name: alex kofman
Admin Organization: membar inc.
Admin Street: 2885 west 12 street
Admin Street: 3k
Admin City: brooklyn
Admin State/Province: New York
Admin Postal Code: 11224
Admin Country: US
Admin Phone: 9173049014
Admin Phone Ext:
Admin Fax:
Admin Fax Ext:
Admin Email: akofman@aol.com
Registry Tech ID: Not Available From Registry
Tech Name: alex kofman
Tech Organization: membar inc.
Tech Street: 2885 west 12 street
Tech Street: 3k
Tech City: brooklyn
Tech State/Province: New York
Tech Postal Code: 11224
Tech Country: US
Tech Phone: 9173049014
Tech Phone Ext:
Tech Fax:
Tech Fax Ext:
Tech Email: akofman@aol.com
Name Server: NS1.WIX.COM
Name Server: NS2.WIX.COM
DNSSEC: unsigned
URL of the ICANN WHOIS Data Problem Reporting System: http://wdprs.internic.net/
```

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT F

# NYS Department of State

# Division of Corporations

## Entity Information

The information contained in this database is current through April 18, 2016.

Selected Entity Name: LEND MARK CAPITAL GROUP INC.
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | LEND MARK CAPITAL GROUP INC. |
| **DOS ID #:** | 4397017 |
| **Initial DOS Filing Date:** | MAY 01, 2013 |
| **County:** | KINGS |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
LEND MARK CAPITAL GROUP INC.
2340 86TH ST.
2ND FL
BROOKLYN, NEW YORK, 11214

**Registered Agent**

NONE

This office does not record information regarding
the names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include
the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# EXHIBIT G

**Anton A. Ewing, JD <anton@antonewing.com> 04/19/16 15:15**

Print    Cancel

| From: | "Alex Kofman" <alex@lendmarksolutions.com> |
|---|---|
| To: | "'SD Drone Videos'" <sddronevideos@gmail.com> |
| Received-On: | Today 15:08 |
| Subject: | RE: FW: Lend Mark Capital Group |
| More... | |

External images are hidden for your safety. Load External Images | View Options

Which state court are we meeting in? NY or California? Can we please do it in Cali? Pretty please.....I really like the beaches there and the food is awesome. But really, Mr. Anton if you think your pathetic half assed scare tactics are working I assure you they are not. Were you really a victim of fraud or is that just a story you make up to try to pull of these bullshit scams...

I am from Brooklyn, NY not some bumble fuck hillbilly town like you and its gonna take a bit more than this to rattle my tail. I'll be waiting for that court date....but forgive me if I don't hold my breath.

p.s. Very crafty how you found me on linked in. Very good investigative work....you caught me red handed....have you considered a career in criminal justice?

---

**From:** SD Drone Videos [mailto:sddronevideos@gmail.com]
**Sent:** Tuesday, April 19, 2016 6:00 PM
**To:** Alex Kofman
**Subject:** Re: FW: Lend Mark Capital Group

see you in court Mr. Kofman.

I am going to shut down your illegal operation of violating the DNC.  Shame on you.

On Tue, Apr 19, 2016 at 2:57 PM, Alex Kofman <alex@lendmarksolutions.com> wrote:

Anton, is this how you plan on getting your new camera? Good luck to you buddy. Paranoia is a serious condition and you should get it checked out. This made my night, what a joke....

**From:** SD Drone Videos [mailto:sddronevideos@gmail.com]
**Sent:** Tuesday, April 19, 2016 5:48 PM

**To:** Alex Kofman
**Subject:** Re: FW: Lend Mark Capital Group


I am going to file a lawsuit in the next hour.  I am on the Do Not Call list.
Confirm at www.donotcall.gov


You will want to find out how you got my number.


Do not destroy any evidence.


On Tue, Apr 19, 2016 at 2:39 PM, Alex Kofman <alex@lendmarksolutions.com> wrote:

No I did not record our call.  What does a tape recorder sound like??


Anton, I do realize you went through a terrible situation with identity theft but I assure you I have no interested in anything but getting you a business loan or saving you money on shipping.   Let's get on a call tomorrow and clear the air once and for all.  At this point I don't want to do anything until you give me a confident green light.


**From:** SD Drone Videos [mailto:sddronevideos@gmail.com]
**Sent:** Tuesday, April 19, 2016 5:26 PM

**To:** Alex Kofman
**Subject:** Re: FW: Lend Mark Capital Group


My last question is then, did you record our telephone call?  It sounded like there was a tape recorder.
That kind of freaked me out a bit.


On Tue, Apr 19, 2016 at 2:21 PM, Alex Kofman <alex@lendmarksolutions.com> wrote:

I totally understand Anton. I am out of the office for the day but if you are up for it, let's get on a video chat some time tomorrow and you can put a face to the voice plus I can show you around our office to put your mind at ease. Believe it or not I actually did this with other clients who can confirm this and can also vouch for our services and professionalism!  The last thing I want is for you to feel uncertain about me or our company.

**From:** SD Drone Videos [mailto:sddronevideos@gmail.com]
**Sent:** Tuesday, April 19, 2016 5:12 PM
**To:** Alex Kofman
**Subject:** Re: FW: Lend Mark Capital Group


Its just that I am giving you my social security number and I don't even know you and I can't seem to confirm anything about you. That's all. Hope you can appreciate that.


I was a victim of identity theft about 7 years ago  I am just now getting back on my feet from that mess.


On Tue, Apr 19, 2016 at 2:10 PM, SD Drone Videos <sddronevideos@gmail.com> wrote:

Do you have a web page?  www.lendmarksolutions.com is not much


On Tue, Apr 19, 2016 at 1:57 PM, SD Drone Videos <sddronevideos@gmail.com> wrote:

"LendMarkCapitalGroup("LMCG")andCapitalAccessNetwork,Inc.("CAN")istheparentofAdvanceMe,Inc. ("AMI")andNewLogicBusinessLoans,Inc.("NLBL")(collectively,... "


So, this is confusing. Which company am I actually dealing with here?


On Tue, Apr 19, 2016 at 1:16 PM, Alex Kofman <alex@lendmarksolutions.com> wrote:


**From:** Alex Kofman [mailto:alex@lendmarksolutions.com]
**Sent:** Tuesday, April 19, 2016 4:13 PM
**To:** 'sddronevidoes@gmail.com'
**Subject:** Lend Mark Capital Group


Hi Anton, it was a pleasure catching up with you today! As per our conversation, please fill out the attached application and email or fax back along with 6 months of your most recent business bank statements. Once we receive the documents it will take one business day to get an offer out. We look forward to servicing your business needs!

Best regards,


Alex Kofman

Managing Director

Lend Mark Capital Group Inc.

Office: 877-404-4710 ext. 105

Fax: 888-434-9080

Email: alex@lendmarksolutions.com


DISCLAIMER: This message is proprietary to Lend Mark Capital, and is intended solely for the use of the individual to whom it is addressed. It may contain privileged or confidential information and should not be circulated or used for any purpose other than for what it is intended. If you have received this message in error, please notify the originator immediately. If you are not the intended recipient, you are notified that you are strictly prohibited from using, copying, altering, or disclosing the contents of this message. LendMark Capital accepts no responsibility for loss or damage arising from the use of the information transmitted by this email including damage from computer viruses.




This email has been checked for viruses by Avast antivirus software.
www.avast.com




This email has been checked for viruses by Avast antivirus software.
www.avast.com



This email has been checked for viruses by Avast antivirus software.